# 24-0842-cv(L), 24-0843-cv(XAP)

# United States Court of Appeals
# for the Second Circuit

FEDERAL INSURANCE COMPANY, FIREMAN'S FUND INSURANCE COMPANY, and NORTH RIVER INSURANCE COMPANY,

*Defendants-Appellants-Cross-Appellees,*

*v.*

AMERICAN PRECISION INDUSTRIES, INC.,

*Plaintiff-Appellee-Cross-Appellant.*

*On Appeal from the United States District Court for the Western District of New York, Case No. 1:14-cv-01050-RJA-HKS, Hon. Richard J. Arcara, District Judge*

## AMERICAN PRECISION INDUSTRIES, INC.'S REPLY BRIEF

**Adam J. Budesheim**
McCarter & English, LLP
250 West 55th Street, 13th Floor
New York, NY 10019
973-848-8616
abudesheim@mccarter.com

*Attorneys for American Precision Industries, Inc.*

February 5, 2025

# TABLE OF CONTENTS

INTRODUCTION .................................................................1

ARGUMENT .......................................................................2

    I.    UNDER VIKING PUMP, POLICIES THAT COVER DEATH AT ANY TIME COMPEL AN ALL SUMS ALLOCATION. ...........2

    II.   THE INSURERS' ARGUMENTS MISREPRESENT POLICY LANGUAGE AND CASE LAW........................................................4

        A.    The Plain Language of the Policy Confirms "Death" Is "Bodily Injury."..............................................................4

        B.    New York Does Not Have a Default Rule Applying Pro Rata in Long-Tail Allocations...........................................6

        C.    The Death at Any Time Provision Satisfies Each of the "Characteristics" the Insurers Assign to Viking Pump.........7

    III.  CASE LAW SUPPORTS THE CONCLUSION THAT DEATH AT ANY TIME COMPELS AN ALL SUMS ALLOCATION UNDER VIKING PUMP. ........................................11

        A.    The Cases Cited by API Support Imposing All Sums Allocation for Policies with Death at Any Time Language...............11

        B.    The Cases Relied Upon by the Insurers Do Not Support Their Arguments and Are Distinguishable. ........................................15

    IV.  THE DRAFTING HISTORY CONFIRMS THAT DEATH IS PART OF BODILY INJURY. .........................................................21

CONCLUSION ....................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*10012 Holdings, Inc. v. Sentinel Ins. Co.*,
  21 F.4th 216 (2d Cir. 2021) ...............................................................10

*Am. Iron & Steel Institute v. Env't Prot. Agency*,
  560 F.2d 589 (3d Cir. 1977) ..............................................................20

*Boston Gas Co. v. Century Indem. Co.*,
  910 N.E.2d 290 (Mass. 2009) ............................................................12

*Breed v. Ins. Co. of N. Am.*,
  46 N.Y.2d 351 (1978) ..........................................................................5

*Cannon Elec., Inc. v. Ace Prop. & Cas. Co.*,
  2017 WL 10992340 (Cal. Super. Ct. Aug. 17, 2017).........................13

*Cannon Elec., Inc. v. Munich Reinsurance Am. Inc.*,
  2024 WL 805219 (Cal. Ct. App. Feb. 27, 2024) .........................13, 14

*Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*,
  98 N.Y.2d 208 (2002) ...................................................................*passim*

*Covil Corp. v. Pa. Nat'l Mut. Cas. Ins. Co.*,
  C.A. No 2020-CP-40-02098 (S.C. Ct. Comm. Pl.) .....................11, 12

*Crossman Comtys. of N.C., Inc. v. Harleysville Mut. Ins. Co.*,
  717 S.E.2d 589 (S.C. 2011) ...............................................................12

*Danaher Corp. v. Travelers Indem. Co.*,
  414 F. Supp. 3d 436 (S.D.N.Y. 2019) ..........................................12, 19

*Keyspan Gas E. Corp. v. Munich Reinsurance Am., Inc.*,
  31 N.Y.3d 51 (2018) ...........................................................................19

*Liberty Mut. Ins. Co. v. Jenkins Bros.*,
  162 N.Y.S.3d 706 (1st Dep't 2022) ....................................................19

*Liberty Mut. Fire Ins. Co. v. J&S Supply Corp.*,
  2015 WL 13649824 (S.D.N.Y. June 29, 2015) ...........................16, 17

ii

*Liberty Mut. Fire Ins. Co. v. J&S Supply Corp.*,
  2017 WL 4351523 (S.D.N.Y. Sept. 29, 2017) ..................................................15

*Liberty Mut. Ins. Co. v. Fairbanks Co.*,
  170 F. Supp. 3d 634 (S.D.N.Y. 2016) ..........................................................16, 17

*Lord v. Int'l Marine Ins. Servs.*,
  420 F. App'x 40 (2d Cir. 2011) .........................................................................22

*Loria v. Gorman*,
  306 F.3d 1271 (2d Cir. 2002) ............................................................................22

*New England Insulation Co. v Liberty Mut. Ins. Co.*,
  988 N.E.2d 450 (Mass. App. Ct. 2013) ..............................................................4

*Olin Corp. v. Am. Home Assurance Co.*,
  704 F.3d 89 (2d Cir. 2012) ..........................................................................10, 16

*Olin Corp. v. OneBeacon Am. Ins. Co.*,
  864 F.3d 130 (2d Cir. 2017) .............................................................................16

*Polar-Mohr Maschinenvertriebsgesellschaft GMBH, Co. KG v.
  Zurich Am. Ins. Co.*,
  2018 WL 1335880 (N.D. Cal. Mar. 15, 2018) ...........................................14, 15

*Radiator Specialty Co. v. Arrowood Indem. Co.*,
  881 S.E.2d 597 (N.C. 2022)..............................................................................18

*Rana v. Islam*,
  887 F.3d 118 (2d Cir. 2018) .............................................................................22

*Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*,
  73 F.3d 1178 (2d Cir. 1995) .............................................................................17

*Travelers Indem. Co. v. Fischbach, LLC*,
  2011 WL 1495196 (N.Y. Sup. Ct. Apr. 8, 2011) ..............................................12

*In re Viking Pump, Inc.*,
  27 N.Y.3d 244 (2016) .................................................................................*passim*

## Other Authorities

BLACK'S LAW DICTIONARY (4th ed. 1957)....................................................5

BLACK'S LAW DICTIONARY (5th ed. 1979).....................................................5

BLACK'S LAW DICTIONARY (6th ed. 1990).....................................................5

Federal Rule of Evidence 901..................................................................22

Federal Rule of Evidence 902..................................................................22

# INTRODUCTION

The Insurers'[1] attempts to side-step the New York Court of Appeals' holding in *In re Viking Pump, Inc.*, 27 N.Y.3d 244 (2016), which is binding on this Court, rests on two false premises: that death is not an injury; and that pro rata is the default rule for allocation to which *Viking Pump* carved out a narrow exception. Indeed, the very formulation of the Insurers' "Issue Presented for Review" relies on these two premises, referring to "death" as "damages" and referring to the "limited exception to pro rata allocation recognized in *Viking Pump*." Insurer Response Brief ("IRB"), Dkt. No. 60.1 at 36. Neither is true. Despite their attempts to argue "death" is not an injury, the Insurer cannot avoid the plain language of the Policies which define bodily injury as "including death at any time." Moreover, the New York Court of Appeals has confirmed repeatedly that pro rata is not a default rule (and, therefore, all sums allocation cannot be an "exception" to this rule). Rather, insurance policies must be interpreted according to their plain meaning and consistent with binding precedent, which is exactly what Plaintiff-Appellee-Cross-Appellant American Precision Industries, Inc. ("API") asks this Court to do.

The New York Court of Appeals held definitively in *Viking Pump* that general liability policies covering loss that occurs at least partly outside the policy period are

---

[1] The Insurers are, collectively, the three Defendants-Appellants-Cross-Appellees Federal Insurance Co., Fireman's Fund Insurance Co., and North River Insurance Co.

ME1 52022110v.3

subject to an all sums allocation, not pro rata. Because a pro rata allocation divides loss among policy periods so no two policies cover the same loss, policies that expressly provide coverage for loss outside the policy period, such as the Primary Policies[2] here, are incompatible with pro rata allocation and require an all sums allocation. Because each Primary Policy at issue in this appeal provides coverage for "death at any time," even if death occurs after the policy period ends, the Primary Policies all provide coverage for loss outside the policy period and are, therefore, incompatible with the pro rata allocation advocated by the Insurers and, instead, are subject to an all sums allocation. A straightforward reading of the policy language allows for no other conclusion.

## ARGUMENT

### I.    Under *Viking Pump*, Policies that Cover Death at Any Time Compel an All Sums Allocation.

In *Viking Pump*, the New York Court of Appeals held that non-cumulation clauses and continuing coverage clauses compel an all sums allocation of long-tail losses, such as asbestos bodily injury claims. The court reasoned:

> Such policy provisions plainly contemplate that multiple successive insurance policies can indemnify the insured for the same loss or occurrence by acknowledging that a covered loss or occurrence may "also [be] covered in whole or in part under any other excess [p]olicy issued to the [insured] prior to the inception date" of the instant policy.

---

[2] "Primary Policies," as used in this brief, has the same meaning as in API's Response Brief ("ARB"), Dkt. No. 54.1 at 10.

*Viking Pump*, 27 N.Y.3d at 261. The court further explained such provisions "presuppos[e] that two policies may be called upon to indemnify the insured for the same loss or occurrence." *Id.* Because the very nature of a pro rata allocation limits coverage to loss occurring within the policy period, a policy provision that "expressly extends a policy's protections beyond the policy period" is incompatible with pro rata allocation and "compels an interpretation in favor of all sums allocation." *Id.* at 262.

Each of the Primary Policies includes a definition of "bodily injury" that requires the Insurer to provide coverage for death that occurs "at any time," even if the death occurs outside the policy period. For example, the 1972-1975 North River policy defines "bodily injury" as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." A-105; *see also* A-657-60, A-663-67, A-756-59, A-762-66, A-898-905, A-271, A-326, A-390, A-459, A-547. Because the terms of the Primary Policies explicitly provide coverage for "death at any time," the Primary Policies provide coverage for death that occurs outside the policy period.

Thus, under the New York Court of Appeals' decision in *Viking Pump*, these Primary Policies are subject to an all sums allocation.

## II. The Insurers' Arguments Misrepresent Policy Language and Case Law.

### A. The Plain Language of the Policy Confirms "Death" Is "Bodily Injury."

In an attempt to avoid *Viking Pump*, the Insurers endeavor to redefine "death" as consequential damages, rather than bodily injury, IRB41, 42, and 49, but the very terms of the Primary Policies directly refute their claim.[3] The Primary Policies expressly define "bodily injury" as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, ***including death at any time*** resulting therefrom." A-105 (emphasis added).[4] In the plainest terms, the Primary Policies establish that bodily injury **includes** death, even if that death occurs outside the policy period. Because New York courts interpret insurance policies "according to common speech," *Viking Pump*, 27 N.Y.3d at 257, the only possible reading of the definition of "bodily injury" is that "bodily injury," as the Primary Policies

---

[3] The Insurers cite to *New England Insulation Co. v Liberty Mutual Insurance Co.*, 988 N.E.2d 450, 454 (Mass. App. Ct. 2013) to support their argument that "death" is not bodily injury. IRB41. Not only was this case decided under Massachusetts law, prior to *Viking Pump*, and in a jurisdiction that adopted a pro rata allocation as a matter of public policy, *see* ARB60, the court's ruling, to the extent it can be interpreted as excluding "death" from bodily injury, runs contrary to the plain meaning of the policy and, therefore, is contrary to New York law.

[4] Some of the policies contain differently worded definitions of "bodily injury," but all explicitly define bodily injury as "***including***" death at any time. A-105, A-657-60, A-663-67, A-756-59, A-762-66, A-898-905, A-271, A-326, A-390, A-459, A-547 (emphasis added).

4

explicitly state, includes "death."[5]

Moreover, the Insurers' focus on whether "death" is "injury" is misplaced because *Viking Pump*, and non-cumulation clauses, focus the inquiry on whether the policy covers "loss" outside the policy period. *See Viking Pump*, 27 N.Y.3d at 261 (referring to multiple policies covering "the same loss or occurrence"). The *Viking Pump* court did not limit its holding to "injury" occurring outside the policy period, and the Insurers have not even attempted to argue that "death" does not fall within the meaning "loss," nor could they.[6]

It is curious that the Insurers expend significant effort to argue that "death does *not* constitute a separate injury subject to later coverage," IRB42, because *Viking Pump* controls when the policy covers the same loss that occurs partly within and partly outside the policy period. *Viking Pump* does not require two separate

---

[5] To the extent the Insurers argue the definition of "bodily injury" has a meaning other than what the plain language states, the Insurers would need to assert the policy language is ambiguous. Such an argument, however, would not avail the Insurers because it is a fundamental principle of insurance law in New York that ambiguous language is construed against the insurer and in favor of the insured. *See Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 353 (1978).

[6] Contemporaneous editions of Black's Law Dictionary defined "loss" in the insurance context to include "injury, damage, etc., to property or persons injured; . . . injury or damage sustained by insured in consequence of happening of one or more of the accidents or misfortunes against which insurer has undertaken to indemnify the insured; pecuniary injury resulting from the occurrence of contingency insured against . . . ." BLACK'S LAW DICTIONARY (6th ed. 1990); *see also* BLACK'S LAW DICTIONARY (5th ed. 1979), BLACK'S LAW DICTIONARY (4th ed. 1957).

injuries; rather, the non-cumulation clause and the continuing coverage clause each refer to a single loss or injury occurring in part outside the policy period. *Viking Pump*, 27 N.Y.3d at 252-53. That death is not a separate injury fully supports the application of *Viking Pump* to the Primary Policies and compels an all sums allocation.

### B. New York Does Not Have a Default Rule Applying Pro Rata in Long-Tail Allocations.

In an attempt to avoid the straightforward application of the plain language of the "death at any time" provision, the Insurers argue for an overly narrow reading of *Viking Pump*, placing limitations on the court's reasoning that do not exist in the text of the decision. The Insurers cast *Viking Pump*'s application of all sums as a "narrow exception" to the "rule" of pro rata, but this characterization is directly contradicted by the *Viking Pump* decision itself. *Viking Pump* explained that the New York Court of Appeals in *Consolidated Edison Co. of New York v. Allstate Insurance Co.*, 98 N.Y.2d 208 (2002) ("*Con Ed*"), did not adopt a "blanket rule" applying pro rata. *Viking Pump*, 27 N.Y.3d at 257. Indeed, the Court of Appeals "did not adopt a strict rule mandating either pro rata or all sums allocation" because the insurance policies must be "enforced as written." *Id.* Although the Insurers argue that "ordinary pro rata allocation" would be "compelled" by the "during the policy period" language, IRB39, the Court of Appeals in *Con Ed* concluded otherwise, finding that such policy language did not mandate a pro rata allocation, but only that a pro rata

6

allocation is "consistent" with the policy language. *Consol. Edison*, 98 N.Y.2d at 224. The Insurers' assertion that pro rata is a "default rule" (IRB50) in New York is simply wrong.

Because there is no "blanket rule" applying pro rata allocation in New York, the Insurers' description of *Viking Pump* as a "narrow exception" to this purported "default rule" of pro rata is likewise false. *Viking Pump* does not create an "exception" to a "rule" that doesn't exist. *Viking Pump*, rather than crafting blanket rules, emphasized that policies are interpreted according to their plain language and courts "will enforce their agreements without passing on the substance of them." *Viking Pump*, 27 N.Y.3d at 257 (internal quotation marks omitted).

## C. The Death at Any Time Provision Satisfies Each of the "Characteristics" the Insurers Assign to *Viking Pump*.

This Court should reject the Insurers' erroneous argument, which springboards from their "narrow exception" premise, that only policies "that contain the specific 'non-cumulation and prior insurance provisions'" at issue in *Viking Pump* compel an all sums allocation. IRB37. *Viking Pump* did not require a specific formulation of terms and conditions to require an all sums allocation; rather, *Viking Pump* engaged in a holistic analysis of the policy language, giving meaning to each provision of the policy to determine whether the policy extends coverage beyond the policy period. *Viking Pump*, 27 N.Y.3d at 262.

Nevertheless, the "death at any time" language satisfies each of the

7

"characteristics" the Insurers assert a policy provision must have before it compels an all sums allocation.

First, "death at any time" clearly contemplates that multiple successive policies can indemnify the insured for the same loss. IRB41-42. A simple example illustrates this point. Assume a claimant alleging first exposure to asbestos from an API product in 1974 dies from mesothelioma in 2020. Each of the nine Primary Policies, issued by the Insurers between 1974 and 1997,[7] would be triggered by this claim and would be responsible for the "death" that occurs in 2020, despite the last of the Primary Policies terminating in 1997. Thus, each of the "multiple successive insurance policies" (IRB41) issued by the Insurers is responsible for the same loss – the death of the claimant.

Second, the "death at any time" provision, much like the continuing coverage clause, requires the policies to cover loss outside the policy period. Because the Insurers cannot dispute that the Primary Policies cover "death" occurring outside their respective policy periods, the Insurers' only argument to distinguish "death at any time" from a continuing coverage clause is the untenable proposition that "death" is not injury. IRB42. As discussed in Section II.A., *supra*, the definitions of "bodily

---

[7] North River sold API a single three-year policy covering the period from 1974 to 1977. Fireman's Fund sold API three consecutive policies covering the period from 1985 to 1989, Federal sold API five consecutive primary policies from 1992 to 1997. *See* ARB10.

8

injury" in the Policies clearly and unequivocally include "death at any time." Thus, death at any time is analogous to a continuing coverage clause and likewise compels an all sums allocation.

Third, whether it is "unfair" to apply a pro rata allocation in conjunction with the "death at any time" language, IRB41, is not part of the *Viking Pump* analysis. The Insurers purport to quote from *Viking Pump* that applying a pro rata allocation while enforcing a non-cumulation clause would "yield an unfair result" by insulating the insurers "from their fair share of liability." IRB39. However, the language the Insurers quote is actually from the New Jersey Supreme Court in a decision holding non-cumulation clauses unenforceable as a matter of public policy, a position directly antithetical to New York law requiring all policy provisions be given effect. *Viking Pump*, 27 N.Y.3d at 260 (quoting *Spaulding Composites Co. v. Aetna Cas. & Sur. Co.*, 176 N.J. 25, 44-45 (2003)). The New York Court of Appeals quoted *Spaulding Composite* solely for its determination that pro rata and non-cumulation clauses are incompatible; *Viking Pump* did not incorporate a "fairness" component to its analysis. New York enforces the insurance policies as written, "without passing on the substance of them." *Viking Pump*, 27 N.Y.3d at 257 (quoting *J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, 21 N.Y.3d 324, 334 (2013)).

To the extent "fairness" is an issue, it would be unfair to enforce insurance policies in a manner contrary to how they are written. The Insurers' argument that

9

it would be "fair" for this Court to apply a pro rata allocation to "death" lacks any textual support in the policies. The Primary Policies agreed to cover "death" at any time, not just a share of death.

Moreover, *Viking Pump* rejected the same argument the Insurers make here. *Viking Pump* addressed *Olin Corp. v. American Home Assurance Co.*, 704 F.3d 89 (2d Cir. 2012) ("*Olin III*"), and rejected its conclusion that pro rata allocation can be applied to policies with non-cumulation clauses. *Viking Pump*, 27 N.Y.3d at 263-64. In *Olin III*, the Second Circuit believed that *Con Ed* mandated a pro rata allocation, but recognized that the continuing coverage clause required the insurer to cover loss occurring after the termination of the policy. To try to reconcile a continuing coverage clause with a pro rata allocation, the court "divided up the damages for each year as if allocating them on a pro rata basis, but then swept the shares attributable to the years outside the policy period back into the earlier policy periods." *Viking Pump*, 27 N.Y.3d at 263 (describing *Olin III*, 704 F.3d 89). The New York Court of Appeals explicitly rejected this attempted "harmonizing" of the non-cumulation clause with a pro rata allocation. *Id.* at 263-64. Nevertheless, that is exactly what the Insurers propose here – that pro rata allocation be applied to the "death" occurring after the policy period and then have it swept back into the Insurers' Primary Policies. IRB42. As the New York Court of Appeals has already foreclosed this argument, this Court must reject it. *10012 Holdings, Inc. v. Sentinel*

10

*Ins. Co.*, 21 F.4th 216, 221 (2d Cir. 2021) ("In construing New York law, a federal court is bound by the law of New York as interpreted by the New York Court of Appeals . . . .).

### III. Case Law Supports the Conclusion that Death at Any Time Compels an All Sums Allocation Under *Viking Pump.*

#### A. The Cases Cited by API Support Imposing All Sums Allocation for Policies with Death at Any Time Language.

The out-of-state cases cited by API clearly support imposing an all sums allocation on policies with non-cumulation clauses, and the Insurers' attempts to distinguish them are misguided. First, the Insurers argue that *Covil Corp. v. Pennsylvania National Mutual Casualty Insurance Co.*, C.A. No 2020-CP-40-02098 (S.C. Ct. Comm. Pl.) (Dkt. No. 54.1 at 70-172), relied on the placement of "during the policy period" in the definition of "bodily injury" to conclude that "death at any time" requires an all sums allocation. IRB54. This argument is unfounded. Although *Covil* noted that the "policy territory" provision does not include a temporal limitation, the court did not, as the Insurers erroneously argue, "attribute[] dispositive weight" to this provision. IRB54. Rather, *Covil* relied on the definition of "bodily injury," which includes both "during the policy period" and "death at any time" provisions (a definition that mirrors the policies at issue in this appeal). The court concluded these two temporal references serve different purposes – "during the policy period" relates to trigger of coverage (*i.e.*, some bodily injury must occur

11

during the policy period for coverage to attach) whereas "at any time" addresses the scope of the bodily injury covered by the policy, including bodily injury (death) that occurs after the policy period ends. Dkt. No. 54.1 at 128-29. None of this is contrary to API's argument here or to New York law.

The Insurers' argument that *Covil* is contrary to a prior South Carolina Supreme Court decision also fails. The Insurers assert that because *Crossman Communities of North Carolina, Inc. v. Harleysville Mutual Insurance Co.*, 717 S.E.2d 589 (S.C. 2011), applied a pro rata allocation, *Covil* is inconsistent with *Crossman*. IRB53-54. *Crossman*, however, deals solely with property damage, not bodily injury, and does not analyze or even mention non-cumulation clauses, continuing coverage clauses, or "death at any time" language.[8] To suggest that *Crossman* precludes application of an all sums allocation for policies with non-cumulation clauses or "death at any time" language is unfounded speculation.[9]

---

[8] The Insurers point to *Crossman*'s adoption of *Boston Gas Co. v. Century Indemnity Co.*, 910 N.E.2d 290 (Mass. 2009), but *Boston Gas* also was a property damage case that did not address non-cumulation clauses, continuing coverage clauses, or "death at any time" language.

[9] None of the New York cases cited by the insurers regarding placement of "during the policy period" language has any discussion of the effect of "death at any time." *See* IRB54 (citing *Cont'l Cas. Co. v. Emps. Ins. Co. of Wasau*, 60 A.D.3d 128 (1st Dep't 2008); *Danaher Corp. v. Travelers Indem. Co.*, 414 F. Supp. 3d 436 (S.D.N.Y. 2019); *Travelers Indem. Co. v. Fischbach, LLC*, 2011 WL 1495196 (N.Y. Sup. Ct. Apr. 8, 2011)). Moreover, two of these cases, *Continental* and *Fischbach*, predate the *Viking Pump* decision.

12

Second, contrary to the Insurers' argument, IRB55-56, *Cannon Electric, Inc. v. Munich Reinsurance America, Inc.* supports API's position. Although the Insurers focus only on the California appellate court decision, the full procedural history elucidates this point. The trial court, applying New York law, held that "death at any time" provisions "promise to protect the policyholder from liability for damages arising from injury that takes place during, but continues beyond, the policy period" and that "[t]his promise is identical to the promise inferred a by non-cumulation condition, *i.e.* that multiple successive insurance policies can indemnify the insured for the same loss or occurrence." *Cannon Elec., Inc. v. Ace Prop. & Cas. Co.*, 2017 WL 10992340, at *21 (Cal. Super. Ct. Aug. 17, 2017). The Insurers focus on the California appellate court's decision, but that decision affirmed the trial court and expressly approved of the trial court's reasoning on this point. *Cannon Elec., Inc. v. Munich Reinsurance Am. Inc.*, 2024 WL 805219, at *3, *12 (Cal. Ct. App. Feb. 27, 2024) (describing analysis of the trial court for "death at any time" provision and ruling "[w]e agree with the trial court that the [death at any time policy] promised to indemnify losses extending beyond the policy period"). In fact, the appellate court reached the same conclusion as the trial court: "The insuring agreement expressly promises to pay 'all sums' and extends protection beyond the policy period to include damages for future care and death at any time. Therefore, in the context of a continuous harm triggering multiple successive policies, it is clear that more than

13

one policy may indemnify the same loss or occurrence." *Cannon Elec*, 2024 WL 805219, at *13.

The California appellate court's decision subsequently compared the policy language in *Con Ed* to the language of the policy before it, noting that *Con Ed* included "during the policy period" language in the insuring agreement, whereas the policy at issue in *Cannon Electric* did not. Nothing in the appellate court decision suggests this comparison is anything more than additional context for its conclusion that "death at any time" requires an all sums allocation. The Insurers, however, incorrectly describe this comparison with *Con Ed* as the "basis" for the court's decision and "dispositive" of the court's reasoning. IRB55-56. Moreover, the Insurers ignore the court's explanation for its ruling that the policy "extends protection beyond the policy period" and ignore that the appellate court ***affirmed*** the trial court's ruling that "death at any time" is an "express contract term[]" that protects the policyholder for injury "that takes place during, but continues beyond, the policy period." The Insurers appear to be attempting to create a false conflict between the *Cannon Electric* court of appeal ruling and *Con Ed*, but the decision in *Cannon Electric* simply does not support their position.

Finally, the Insurers' attempt to undermine the reasoning of *Polar-Mohr Maschinenvertriebsgesellschaft GMBH, Co. KG v. Zurich American Insurance Co.*, 2018 WL 1335880 (N.D. Cal. Mar. 15, 2018), relies on their erroneous argument

14

that "death" is not injury. *See* Section II.A., *supra*. The Insurers argue that *Polar-Mohr* only "allowed coverage for certain *damages* outside the policy period," IRB56, but their argument ignores the full context of the court's decision. The *Polar-Mohr* court did not say, as the Insurers claim, that the policy provides "coverage" for damages; rather, *Polar-Mohr* said the policy promises "indemnification to damages." *Polar-Mohr*, 2018 WL 1335880, at *4. *Polar-Mohr* was speaking in the context of amounts that are paid; insurers don't pay injury, they pay damages. Indeed, in the very next paragraph in the decision, *Polar-Mohr* quoted the policy's insuring agreement obligating the insurer to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages." *Id.* Until the bodily injury is converted into monetary damages, either through settlement or a judgment, there is nothing for the insurer to pay. *Polar-Mohr* was not, as the Insurers suggest, determining that death was not part of bodily injury.

## B. The Cases Relied Upon by the Insurers Do Not Support Their Arguments and Are Distinguishable.

The case law cited by the Insurers in support of their arguments rely on abrogated court decisions or do not address the issue before this Court, confirming that the Insurers have no legal support for their position. Indeed, the Insurers appear to be grasping at straws to justify their proposed departure from the plain meaning of the policy language and the principles of *Viking Pump*.

The Insurers erroneously assert that *Liberty Mutual Fire Insurance Co. v. J&S*

15

*Supply Corp.*, 2017 WL 4351523 (S.D.N.Y. Sept. 29, 2017) ("*J&S II*"), rejected the application of an all sums allocation based on "death at any time," IRB47, but *J&S II* made no such ruling. *J&S II* does not even mention the word "death," much less analyze the applicability of *Viking Pump* to the "death at any time" provision. Rather, *J&S II* simply denied a motion for reconsideration of a prior decision, *Liberty Mutual Fire Insurance Co. v. J&S Supply Corp.*, 2015 WL 13649824 (S.D.N.Y. June 29, 2015) ("*J&S I*"). *J&S I* was decided prior to *Viking Pump* and relied on *Olin III*, the Second Circuit ruling that was abrogated by *Viking Pump*. *Id.* at *7 (citing *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89 (2d Cir. 2012), *abrogated by In re Viking Pump, Inc.*, 27 N.Y.3d 244, 263-64 (2016)); *see also Olin Corp. v. OneBeacon Am. Ins. Co.*, 864 F.3d 130, 143-44 (2d Cir. 2017) ("*Olin IV*") (noting that *Viking Pump* required "modification of the approach" the Second Circuit had taken in *Olin III* to apply "all sums" allocation). *J&S II*, in denying the motion for reconsideration, addressed only that the policies at issue did not have non-cumulation clauses of the type addressed in *Viking Pump*; there is simply no indication the *J&S II* court reconsidered whether "death at any time" required an all sums allocation. In short, there is no basis for the Insurers' assertion that *J&S II* considered, much less decided, whether "death at any time" requires an all sums allocation under the principles of *Viking Pump*.

*Liberty Mutual Insurance Co. v. Fairbanks Co.*, 170 F. Supp. 3d 634 (S.D.N.Y.

16

2016), is similarly unavailing. IRB48. First, *Fairbanks* was decided in March 2016, several months before *Viking Pump*. Second, contrary to the implication of the Insurers in their brief, IRB48, *Fairbanks* does not discuss or rule on whether "death at any time" requires an all sums allocation. *Fairbanks* quotes the definition of bodily injury, including the "death at any time" language, but does not discuss this language at all in its analysis.[10] *Id.* at 644. Similarly, *Fairbanks* cites to *J&S I*, including quoting the policy language from *J&S I* that includes "death at any time," but only cites to the discussion in *J&S I* regarding "during the policy period."[11] *Id.* Finally, there is no indication that the insured in *Fairbanks* ever argued to the court that "death at any time" requires an all sums allocation.[12] The Insurers' reliance on *Fairbanks*, a decision that does not address the issue in this appeal, reinforces the lack of any legal support for the Insurers' position under New York law.

Nor does the out-of-state decision on which the Insurers rely, *Radiator*

---

[10] *Fairbanks* quotes the definition of bodily injury, including "death at any time," but emphasizes the "during the policy period" language and cites to *Con Ed* and *Stonewall Insurance Co. v. Asbestos Claims Management Corp.*, 73 F.3d 1178 (2d Cir. 1995), two cases that do not even mention "death at any time," much less analyze the provision. *Fairbanks*, 170 F. Supp. 3d at 644-45.

[11] *Fairbanks*'s citation to pages 13 and 14 of *J&S I* corresponds to pages *6 to *7 of the Westlaw citation.

[12] The insured, Fairbanks Co., quoted policy definitions that included the "death at any time" language in some of its briefing, but did not make any arguments regarding the language. *See* 2015 WL 6697764, 2015 WL 6697698, 2015 WL 6697689, 2015 WL 12965164, 2015 WL 12964546, 2015 WL 12965163.

*Specialty Co. v. Arrowood Indemnity Co.*, 881 S.E.2d 597 (N.C. 2022), support their argument. *Radiator Specialty*, which analyzed coverage for injuries related to benzene exposure, concluded that benzene does not cause progressive injury (expressly distinguishing benzene injuries from asbestos injuries) and applied an exposure trigger, expressly rejecting the injury-in-fact trigger adopted by New York courts for long-tail claims. Indeed, *Radiator Specialty* concluded *Viking Pump*'s reasoning, specifically with respect to non-cumulation clauses, would not apply because "benzene causes injury at the time of exposure, rather than a continuous injury." *Id.* at 616. When discussing "death at any time," the *Radiator Specialty* court cast its analysis "[i]n the context of benzene exposure." *Id.* at 616 n.13. The court also reiterated that "[b]ecause our holding is specific to the nature of benzene-related injury, it does not conflict with the holdings of . . . *In re Viking Pump*." *Id.* at 617 n.16. That the Insurers rely on this case – one that declines to apply *Viking Pump*'s analysis of non-cumulation clauses because the nature of benzene injury is so different from the nature of asbestos injury – once again reinforces that they have no legal support for their position.

The Insurers devote an entire subsection of their brief to New York cases which involved policies with "death at any time" in the policy definition of bodily injury, but which do not analyze the provision at all. IRB50-52. The Insurers argue that because these courts did not rule on whether death at any time requires an all

18

sums allocation, the cases implicitly rejected this argument. The first such case cited by the Insurers, *Con Ed*, completely nullifies their argument. *Con Ed*, as discussed before, concluded that the insurance policies at issue in that case were subject to a pro rata allocation. *Viking Pump* noted that, although *Con Ed* did not mention non-cumulation clauses in the decision, some of the policies contained the clauses. *Viking Pump*, 27 N.Y.3d at 258 n.5. Despite the presence of non-cumulation clauses in the policies, *Con Ed* applied a pro rata allocation, yet *Viking Pump* did not deem *Con Ed*'s silence on the matter to be a rejection of all sums allocation for policies with non-cumulation clauses. Similarly, simply because some of the policies contain "death at any time" language, *Con Ed*'s silence on all sums allocation should not be deemed a rejection of all sums allocation for policies providing coverage for "death at any time." *Viking Pump* confirms that the silence of a court on an argument not made to that court is not an implicit rejection of the argument never made.

The Insurers cite to several other New York allocation decisions applying pro rata to policies with "death at any time" language, but none of these cases involve parties arguing for all sums allocation based on that language. IRB51 (citing *Roman Catholic Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 21 N.Y.3d 139, 148 (2013); *Keyspan Gas E. Corp. v. Munich Reinsurance Am., Inc.*, 31 N.Y.3d 51 (2018); *Liberty Mut. Ins. Co. v. Jenkins Bros.*, 162 N.Y.S.3d 706 (1st Dep't 2022); *Danaher Corp. v. Travelers Indem. Co.*, 414 F. Supp. 3d 436 (S.D.N.Y.

19

2019). The Insurers' attempt to infer a rejection of API's argument based on the silence of courts to which the argument was never made is, yet again, confirmation that the Insurers have no legal authority to support their argument.

The Insurers conclude their argument in this section of their brief by trying to resuscitate an argument that because *Viking Pump* did not mention the argument of an *amicus* brief that "death at any time" required an all sums allocation, *Viking Pump* thereby rejected the argument. IRB51-52. API's cross-appellant brief already rebutted this argument, noting that, because courts are not even required to consider *amicus* arguments, no inferences can be drawn from the court not addressing the argument. *See* ARB63, citing *Am. Atheists, Inc. v. Port Auth. of N.Y. & N.J.*, 760 F.3d 227, 237 n.11 (2d Cir. 2014). In response, the Insurers cite to *American Iron & Steel Institute v. Environmental Protection Agency*, 560 F.2d 589, 596 n.35 (3d Cir. 1977), to argue that an *amicus* argument not adopted by the court is thereby rejected. IRB52. The Insurers' argument is baseless. The *amicus* referenced by the *American Iron* court had filed an *amicus* brief in the U.S. Supreme Court regarding the authority of the E.P.A. to make certain regulations. Although the Supreme Court did not address the *amicus* arguments, it ruled against the outcome advocated by the *amicus*, which the Third Circuit interpreted as an implicit rejection of the argument of the *amicus*. *Viking Pump* is the opposite. There, the New York Court of Appeals reached the same conclusion advocated by the *amicus*, though on the basis argued

20

by the parties, but did not address the basis argued by the *amicus*. Because it reached the same conclusion as advocated by the *amicus*, there is no justification for inferring *Viking Pump* implicitly rejected the *amicus* argument.

## IV. The Drafting History Confirms That Death Is Part of Bodily Injury.

The Insurers' discussion of the alleged drafting history of the Insurance Services Office ("ISO") standard form comprehensive general liability ("CGL") policies is improper and is irrelevant to the issue before this Court. In effect, the Insurers ask this Court, in arguments never presented to the District Court, to interpret the meaning of the 1966 standard form policy—without presenting that form to this Court for review—and to conclude that the 1973 standard form policy has the same meaning and application. Here, too, the Insurers appear to be grasping at straws.

As an initial matter, this is an argument based in part on factual evidence never submitted to the trial court and not part of the record on appeal. The Insurers never raised drafting history to the District Court, never presented any factual evidence on the drafting history, never proffered any witnesses on the topic, and never elicited any testimony regarding the drafting history. Moreover, the Insurers included in their Addendum to their Response Brief two documents that were not submitted to the District Court, not previously provided to API, and not part of the record on appeal. ADD-09-18, ADD-19-26. As such, this Court should disregard these

documents. *See Loria v. Gorman*, 306 F.3d 1271, 1280 n.2 (2d Cir. 2002) (explaining this Court ordinarily does not consider "material not included in the record on appeal"), *Lord v. Int'l Marine Ins. Servs.*, 420 F. App'x 40, 42 (2d Cir. 2011) (explaining "this Court's review is limited to the record on appeal"), *Rana v. Islam*, 887 F.3d 118, 122 (2d Cir. 2018) (declining to consider "extra-record assertions and documents").

Moreover, the documents, which are both marked "CONFIDENTIAL," have not been authenticated by the Insurers per Federal Rule of Evidence 901 and do not fall into any of the exceptions to authentication for self-authenticating documents under Federal Rule of Evidence 902. Indeed, the Insurers provide nothing to establish the provenance of these documents; while they contain a stamp of "ISO" on each page, it is not clear whether this indicates the documents were drafted by ISO, were received by ISO, or possibly were Bates stamped with an ISO prefix as a document production in some other matter. It is entirely inappropriate for the Insurers to attempt to introduce new evidence, on a topic not previously raised in this litigation, without satisfying any of the criteria necessary for the admission of such evidence in the District Court. This attempted end-run around the Rules of Evidence and the Rules of Appellate Procedure should not be countenanced.

Further, these documents and the arguments relying on these documents are irrelevant because the Insurers have not alleged, much less established, that any of

22

the Primary Policies even use the 1973 ISO standard form.[13]  IRB43-46.  In fact, several of the policies clearly ***do not*** use the 1973 ISO standard form.[14]  Arguments about the meaning of the 1973 ISO standard form, therefore, are irrelevant to interpretation of these Primary Policies.

Even if the Policies used the 1973 ISO standard CGL form, the Insurers still have not provided the court with supporting documentation for their position.  The Insurers ask this Court to accept that the 1973 form was not substantively different from the 1966 and earlier forms (IRB44), but they did not provide any of the 1966 and earlier forms for review, neither to the District Court nor this Court.  Essentially, the Insurers are asking this Court to accept as true the analysis of the commentators, but without the ability to review the documents on which the commentators are commenting.

Even if Insurers' representations about the missing 1966 and earlier policy forms are correct, the argument drawn from these commentaries does not support

---

[13] The North River policy and two of the Fireman's Fund policies use forms without any identifying trademark or copyright information.  A-105, A-657-60, A-663-67, A-756-59, A-762-66.  It cannot be determined from the face of these policies whether they are utilizing the 1973 ISO standard form.

[14] The third Fireman's Fund policy uses a form copyrighted in 1982 and 1984, not 1973.  A-898-905.  All the Federal policies use different language for the definition of bodily injury and have edition dates of 1987 and 1994, not 1973.  A-271, A-326, A-390, A-459, A-547.

23

the Insurers position that "death" is not injury. For example, the FIC Quarterly article refers to "death" as an exception to the "during the policy period" time limitation, and explains that it is not a "separate bodily injury but will be covered by the policy in force at the time of the injury." ADD-07. This description supports API's contention that "death at any time" is indeed part of the bodily injury that triggered the policy, extends coverage beyond the policy period, and, thus, requires an all sums allocation. Likewise, the Basic Text of Insurance Law explains that death "is treated as part of the original injury even when it occurs at a substantially later date." ADD-30. The explanation reinforces that "death" is part of bodily injury, and a policy providing coverage for death at any time thereby extends coverage for bodily injury beyond the policy period.

24

## CONCLUSION

For the foregoing reasons, this Court should reverse the decision of the District Court applying a pro rata allocation to the Primary Policies, despite their inclusion of a "death at any time" provision extending coverage beyond the policy period, and remand for entry of partial summary judgment in favor of API that the Primary Policies are subject to an all sums allocation.

Respectfully submitted,

*/s/ Adam J. Budesheim*
Adam J. Budesheim
McCarter & English, LLP
250 West 55th St., 13th Floor
New York, NY 10019
973-848-8616

abudesheim@mccarter.com

Attorneys for American
Precision Industries, Inc.

25

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Second Circuit Rule 32.1 because this brief contains 6,185 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

Dated: February 5, 2025

Respectfully submitted,

*/s/ Adam J. Budesheim*

Adam J. Budesheim
McCarter & English, LLP
250 West 55th St. 13th Floor
New York, NY 10019
(973) 848-8616

ME1 52022110v.3

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of February, 2025, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Second Circuit by using the appellate CM/ECF system. All participants are registered CM/ECF users, and will be served by the appellate CM/ECF system.

Dated: February 5, 2025

Respectfully submitted,

*/s/ Adam J. Budesheim*

Adam J. Budesheim
McCarter & English, LLP
250 West 55th St. 13th Floor
New York, NY 10019
(973) 848-8616